OPINION
{¶ 1} Appellant Dawn Rodriguez appeals from a judgment granting legal custody of one of her children to appellees William and Yvonne Arnold. She also appeals from an order granting an extension of temporary custody of another child to the Montgomery County Children's Services Board (MCCSB). Rodriguez contends that the decision of the trial court is not supported by the evidence.
 {¶ 2} We conclude that there is evidence in the record upon which the trial court could determine that the best interests of the children were served by the disposition made by the trial court. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} Rodriguez is the mother of C.H. and A.H.G. In 2002, the trial court adjudged both children dependent and granted interim custody of both children to MCCSB. A case plan was developed which required Rodriguez to obtain and maintain suitable housing and employment. The plan also required Rodriguez to consistently visit with the children. Finally, Rodriguez was required to undergo a psychological assessment and a parenting assessment.
 {¶ 4} In November, 2003, MCCSB filed motions seeking extensions of temporary custody with regard to both children. C.H.'s foster parents, William and Yvonne Arnold, also filed a motion seeking legal custody of C.H. The trial court conducted a dispositional hearing on all pending motions.
 {¶ 5} At trial, MCCSB caseworker Michelle Lui did not dispute that Rodriguez had made improvement and had progressed with her case plan over the two years following the removal from the home. But Lui testified that one of the biggest concerns involved Rodriguez's low cognitive functioning, which MCCSB believed would prevent her from parenting. Lui also related that Rodriguez had exhibited an inability to cope with stress and parenting, which resulted in her leaving her children with relatives for months at a time without visiting. Lui testified that Rodriguez had placed her other seven children in the care of relatives when she encountered any stressors.
 {¶ 6} A psychologist testified on behalf of MCCSB. Dr. Andy Higgins testified that pursuant to his psychological evaluation and testing of Rodriguez, he did not believe her capable of effectively parenting the children. Higgins indicated that Rodriguez is cognitively slower than the average person and that she has some cognitive limitations. He described her as having a mental age of a twelve- or thirteen-year-old. He also indicated that one test administered to Rodriguez indicated that she was not bonded to the children. He also testified that after observing Rodriguez with the children he determined that she was "very weak in terms of her parenting skills." Higgins testified that the results of one test indicated that Rodriguez was trying to "fake" it and make herself look good. Higgins testified that Rodriguez exhibited poor decision making and that the children would be at high risk for "neglect through * * * inappropriate parenting."
 {¶ 7} The evidence shows that Rodriguez lives with a man who is an illegal alien subject to deportation. The evidence shows that this partner provides almost all of the financial support for Rodriguez and for their residence.[1]
 {¶ 8} Rodriguez presented the testimony of another psychologist, Dr. Layh, and the testimony of her counselor at the Family Service Association, Sarah Kramer. Layh testified that Rodriguez had the capability to provide a stable and adequate home for her children and that he believes she is capable of adequately parenting. Kramer, a licensed social worker, testified that Rodriguez could independently parent her children, and that she is a loving mother who is bonded with her children.
 {¶ 9} Following the hearing, the trial court granted the MCCSB an extension of temporary custody with regard to A.H.G. and granted the Arnolds' motion for legal custody of C.H. Rodriguez appeals.
 II {¶ 10} Rodriguez's sole Assignment of Error is as follows:
 {¶ 11} "The trial court's decision to grant legal custody of [C.H.] To the foster parents and the court's decision to grant temporary custody of [a.h.g.] to the montgomery county children's services was improper."
 {¶ 12} Rodriguez contends that the trial court's decisions with regard to the custody of her two children are not supported by the evidence. She argues that she complied with all the terms of her case plan. She further argues that the testimony of the witnesses compels a finding that the trial court's decisions are erroneous.
 {¶ 13} R.C. 2151.353 permits a trial court that has adjudicated a child as dependent to make an order in the dispositional stage of the proceeding, awarding legal custody of the child to any person, who, prior to the dispositional hearing, files a motion requesting legal custody of the child. The statute also permits the trial court to commit the child to the temporary custody of a public children services agency. Once a child is adjudicated dependent, the best-interest-of-the-child standard is used to determine the best dispositional option for the child. In reCunningham (1979), 59 Ohio St.2d 100, syllabus.
 {¶ 14} On appeal, we will not reverse an award of temporary or legal custody absent an abuse of discretion. In re Nice (2001),141 Ohio App.3d 445, 455, 2001-Ohio-3214; In re Collier (Feb. 4, 1992), Athens App. No. CA-1494; In re Joemiyde L., Lucas App. Nos. L-04-1109, L-04-1110, 2005-Ohio-537, ¶ 17. Abuse of discretion implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. If the trial court's decision regarding temporary or legal custody is supported by competent, credible evidence, then we may not reverse it.Nice, 141 Ohio App.3d 445, at 455. The trial court is in the best position to weigh the testimony and observe the witnesses' demeanor in order to gauge their credibility. In re Keaton, Ross App. Nos. 04CA2785, 04CA2788, 2004-Ohio-6210, ¶ 36.
 {¶ 15} In this case, the trial court determined that the best interests of the children necessitated its decisions with regard to temporary and legal custody. The court noted that Rodriguez "is 31 years of age and has nine children, none of whom are in her custody, and the nine children have at least four different fathers; Butler County Child Welfare System and Butler County Courts have been involved with at least three of the children over a period of four years or more with relatives * * * involved in the ongoing custody of those children; [Rodriguez] testified that she has `no relationship with her mother, sister, aunts or fathers of the other seven, if not eight children, and although she claims to visit with them, there was little or no verification of that contact. * * *"
 {¶ 16} The court noted that Rodriguez had "made progress in the areas of employment, visitation and completion of some parenting programs." However, the court further found that "* * * [she] is at best low functioning with an approximate 80 IQ and a mental age of twelve to thirteen years." The court found that Rodriguez's "history and prior choices put [the children] at risk."
 {¶ 17} Each child was appointed a Guardian Ad Litem, and both GAL's advocated the action taken by the trial court. As previously noted, Dr. Higgins testified that based upon his testing and evaluation he determined that Rodriguez was not presently capable of parenting.
 {¶ 18} The evidence also showed that Rodriguez did not appear capable of parenting without the help of her partner, with whom she lived. As noted above, Rodriguez only works part-time and relies upon her partner for her financial wellbeing. Should her partner be deported, Rodriguez would not be capable, based upon her employment earnings, to independently provide for herself and the two children.
 {¶ 19} Rodriguez contends that the trial court's decision is erroneous, given that she complied with her case plan, and her psychologist, Dr. Layh, and her counselor, Ms. Kramer, testified in her favor.
 {¶ 20} As previously noted, while Rodriguez did make strides in meeting the goals of her case plan, the evidence indicates that she remains incapable of caring for the children on her own.
 {¶ 21} With regard to the testimony of Dr. Layh, we note that the trial court was in the best position to determine the credibility of the witnesses and was within its discretion to credit the testimony of Dr. Higgins over that of Dr. Layh. Also, with regard to Kramer, the trial court was entitled to give little credence to her testimony.
 {¶ 22} In light of the testimony and evidence presented, we conclude that the trial court's orders regarding the legal custody of C.H. and the temporary custody of A.H-G. are supported by the evidence. Accordingly, Rodriguez's sole Assignment of Error is overruled.
 III {¶ 23} Rodriguez's sole Assignment of Error having been overruled, the judgment of the trial court is Affirmed.
Brogan, P.J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] At the time of the hearing, Rodriguez was only working twelve hours per week, earning eight dollars an hour. Her employment history was "inconsistent" during the relevant time frame.